FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 2 - 2004

..., Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

-------------------------------------------------- x
JOHN RAMSEY, PATSY RAMSEY and :
BURKE RAMSEY, a minor, by his
next friends and natural parents, :
JOHN RAMSEY and PATSY RAMSEY,
                                                 :        CASE NO.: 1 03 CV-3976 (TWT)
        Plaintiffs,
                                                 :
vs.
                                                 :
FOX NEWS NETWORK, L.L.C., d/b/a
Fox News Channel,                                :

        Defendant.                               :
-------------------------------------------------- x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 2

THE WORDS COMPLAINED OF ARE NOT DEFAMATORY
OF ANY PLAINTIFF ............................................................................................ 2

   A. Plaintiffs Base Their Case On The News Report's
      Script, And Not On Any Video ................................................................. 2

   B. The News Report Does Not Defame Any Of The Plaintiffs ......................... 4

      1. The News Report Is Not Defamatory Of Burke ....................................... 5

      2. John And Patsy Ramsey Have Improperly Adopted A New
         Theory In Support Of Their Defamation Cause Of Action ...................... 8

      3. The News Report's Statement Regarding The Lack
         Of Evidence Linking An Intruder To JonBenét's
         Death Does Not Defame Plaintiffs ....................................................... 12

CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

Bryant v. Avado Brands, Inc.,
187 F.3d 1271 (11th Cir. 1999)............................................................................. 2

Davis v. Williams Communications, Inc.,
258 F. Supp. 2d 1348 (N.D. Ga. 2003) ......................................................... 7, 10

Hoffman-Pugh v. Ramsey,
193 F. Supp. 2d 1295 (N.D. Ga.) (Thrash, J.),
aff'd, 312 F.3d 1222 (11th Cir. 2002)........................................................ 4, 8, 10

Wolf v. Ramsey,
253 F. Supp. 2d 1323 (N.D. Ga. 2003) ............................................. 8, 10, 11, 12

## State Cases

Atlanta Journal-Constitution v. Jewell,
251 Ga. App. 808, 555 S.E.2d 175 (2001) ....................................................... 10

Gast v. Brittain,
589 S.E.2d 63 (Ga. 2003)................................................................................. 13

Harcrow v. Struhar,
236 Ga. App. 403, 511 S.E.2d 545 (1999).................................................. 11, 12

McCracken v. Gainesville Tribune, Inc.,
146 Ga. App. 272, 246 S.E.2d 360 (1978)....................................................... 10

Mead v. True Citizen, Inc.,
203 Ga. App. 361, 417 S.E.2d 16 (1992)............................................................ 5

Palombi v. Frito-Lay, Inc.,
241 Ga. App. 154, 526 S.E.2d 375 (1999)....................................................... 14

\\NY - 96405\0035 - 844059 v2

Quinones v. Maier & Berkele, Inc.,
    192 Ga. App. 585, 385 S.E.2d 719 (1989)............................................................3

Zarach v. Atlanta Claims Assoc.,
    231 Ga. App. 685, 500 S.E.2d 1 (1998)............................................................4

**Federal Statutes**

Fed. R. Civ. Proc. 12(b)(6)..............................................................................3, 7

Fed. R. Evid. 201.........................................................................................7, 10

**State Statutes**

Ga. St. Ann. § 51-5-7.....  ...........................................................................10

\\NY - 96405/0035 - 844059 v2

## PRELIMINARY STATEMENT

No matter how valiantly Plaintiffs try to argue otherwise, Fox News Channel's motion to dismiss should be granted because the News Report cannot be construed as defamatory.[1] Stripped of its focus on irrelevant issues and matters not raised in the Complaint, Plaintiffs' opposition papers offer nothing that advances their cause. The News Report is crystal clear in stating that the Ramseys are no longer the sole focus of the JonBenét homicide investigation and that Burke is not a focus at all. Plaintiffs know this, yet persist in trying to convince this Court that viewers might conclude otherwise. The Court should reject Plaintiffs' arguments.

Because Plaintiffs admit that they have not set forth a claim for defamation per quod, the News Report must be capable of a per se defamatory meaning for their case to proceed. Plaintiffs have not provided the Court with any persuasive arguments tending to show that the News Report is defamatory per se. Instead, their papers consist primarily of: (1) an unsupported claim that Defendant was required to include a videotape copy of the News Report in its motion to dismiss—

---

[1]  Hereinafter, the "News Report" refers to the news report cablecast by defendant Fox News Network, LLC (the "Fox News Channel" or "Defendant"). Further, "the Ramseys" refers to plaintiffs John and Patsy Ramsey, and "Burke" refers to plaintiff Burke Ramsey (collectively, the "Plaintiffs"). Plaintiffs' amended complaint is hereinafter referred to as the "Complaint."

even though the Complaint makes no mention of the video portion of the News Report; and (2) a lengthy discussion of why the statement "Detectives say they had good reason to suspect the Ramseys" is defamatory per se of John and Patsy Ramsey, despite the fact that no such allegation was ever made in the Complaint. The few pages of Plaintiffs' opposition that do raise legitimate issues do not provide an adequate basis upon which the Court should allow this case to go forward. The bottom line remains the same: The News Report is not capable of a defamatory per se meaning and the Complaint should be dismissed in its entirety.[2]

## ARGUMENT

## THE WORDS COMPLAINED OF ARE
## NOT DEFAMATORY OF ANY PLAINTIFF

### A.    Plaintiffs Base Their Case On The News Report's
### Script, And Not On Any Video

Plaintiffs make much of the fact that the Fox News Channel did not supply the Court with a videotape copy of the News Report, boldly suggesting that this fact alone is sufficient to deny the motion.[3] (Plaintiffs' Response to Defendant's

---

[2]    Matter pertinent to this reply memorandum is set forth in the accompanying Declaration of Dori Ann Hanswirth, dated July 1, 2004 (the "Hanswirth Decl."), and the Declaration of Dianne Brandi, dated July 1, 2004 (the "Brandi Decl.") and the exhibits annexed thereto.

[3]    On a motion to dismiss, the Court should not consider affidavits setting forth extraneous facts. See Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1279-80 (11th

2

Motion to Dismiss ("Pl. Opp.") at 6-8, 10-12).  Plaintiffs are wrong.  Instead, it is

the <u>Plaintiffs</u>' obligation to plead their claim for defamation by setting forth the

particular statements and information they contend caused them to suffer "public

hatred, contempt and ridicule." (Complaint, ¶ 61).  The Plaintiffs must also prove

that the allegedly defamatory material was published.  <u>See</u> <u>Quinones v. Maier &</u>

<u>Berkele, Inc.</u>, 192 Ga. App. 585, 588, 385 S.E.2d 719, 722 (1989).  Turning these

principles on their heads, Plaintiffs claim that:  "Since defendant refused to provide

plaintiff with a copy of the video prior to the filing of this lawsuit and has failed to

provide this Court with a copy, the motion to dismiss *must be denied*." (Pl. Opp. at

12).  Interestingly, Plaintiffs cite no legal authority to support this proposition.  The

reason is simple; there is none.

The fact is that Plaintiffs based their entire Complaint upon statements

contained in a <u>script</u>, annexed to the Complaint as Exhibit A.  Plaintiffs now, <u>for</u>

<u>the first time</u>, argue that the script should be viewed with the "photos and video" of

---

Cir. 1999) (distinguishing case because it "dealt with affidavits attached to a
motion to dismiss, clearly the sort of evidentiary material that is not appropriate at
the [Fed. R. Civ. P.] 12(b)(6) stage").  Therefore, the affidavit of Plaintiffs' counsel,
L. Lin Wood ("Wood"), supporting Plaintiffs' Response to Defendant's Motion to
Dismiss, should be disregarded insofar as it sets forth facts extraneous to the
pleadings.  In any event, the Fox News Channel is not aware of any instance, at
any time, in which counsel for the Plaintiffs asked counsel for the Fox News
Channel for a videotape of the News Report.

the News Report. (Pl. Opp. at 11). However, Plaintiffs' Complaint is <u>not</u> based upon any photos or video, nor is there any wording in the Complaint to suggest that the video portion of the News Report must be viewed to glean the allegedly defamatory meaning. To the contrary, the <u>words</u> of the News Report are the sole focus of the Complaint. The Fox News Channel did not include a videotape copy of the News Report with its motion to dismiss for the obvious reason that Plaintiffs did <u>not</u> base their Complaint on a videotape version of the News Report.[4]

## B.    The News Report Does Not Defame Any Of The Plaintiffs

Plaintiffs readily admit that they "have not asserted a claim for libel per quod." (Pl. Opp. at 12). As such, in order to proceed, Plaintiffs must show how the News Report is defamatory <u>per se</u>, meaning that it states, "'that one is guilty of a crime, dishonesty or immorality.'" (Pl. Opp. at 13 (quoting <u>Zarach v. Atlanta Claims Assoc.</u>, 231 Ga. App. 685, 688, 500 S.E.2d 1, 5 (1998)).

---

[4]    However, now that Plaintiffs have raised the issue, and for the Court's convenience, the Fox News Channel is providing a videotape copy of the News Report from December 26, 2002. (<u>See</u> Brandi Decl., ¶¶ 2-4, Ex. A). The submission of the videotape of the News Report does not convert this motion to one for summary judgment because the News Report is referred to in the Complaint and is central to the Plaintiffs' claims. <u>See, e.g.</u>, <u>Hoffman-Pugh v. Ramsey</u>, 193 F. Supp. 2d 1295, 1297, n.1 (N.D. Ga.) (Thrash, J.), <u>aff'd</u>, 312 F.3d 1222 (11th Cir. 2002) (copy of hardcover version of the book at issue attached to defendants' motion to dismiss could "be considered without converting the motion into a motion for summary judgment because the document is referred to in the Complaint and is central to or integral to the Plaintiff's claims").

In assessing the defamatory nature of a news report, courts may decide: (1) the statement is defamatory; (2) the statement is ambiguous and must be submitted to the jury; or (3) the statement is not defamatory as a matter of law. Mead v. True Citizen, Inc., 203 Ga. App. 361, 362, 417 S.E.2d 16, 17 (1992) (affirming summary judgment because article, as a matter of law, did not accuse plaintiff of committing crime). When deciding if a news report is defamatory as a matter of law, courts should look at what construction the average reader would place on the news report as a whole. (Id.) In this case, it is implausible to conclude that the average viewer would come away with the impression that the News Report accuses any of the Plaintiffs of committing a crime. Instead, the average viewer would not consider the News Report to be defamatory.

**1.    The News Report Is Not Defamatory Of Burke**

Burke argues that he has been defamed because the News Report labels him a suspect and suggests that he was involved in a crime. (Pl. Opp. at 18-21). The crux of Burke's argument is that the term "the Ramseys" in the sentence "detectives say they had good reason to suspect the Ramseys" could be construed to refer to him. (Id.) As the Fox News Channel has already explained, this construction is patently unreasonable and not supported by the words of the News Report itself. (Memorandum of Law in Support of Defendant's Motion to Dismiss

5

Plaintiffs' Amended Complaint, at 14-18). As the News Report makes clear, Burke is <u>not</u> a suspect, and he has recovered monetary settlements from people who have incorrectly called him one. (Complaint, Ex. A). Hence, he is obviously not one of "the Ramseys" whom detectives considered a suspect.

Further, nothing in the News Report is libelous <u>per se</u> of Burke. Contrary to Plaintiffs' assertion, the statement in the News Report that Burke had "been cleared" does not create a defamatory meaning that is otherwise absent. (<u>See</u> Pl. Opp. at 21). Plaintiffs contend that "[t]he idea that an individual has 'been cleared' reasonably conveys, among other things, that one was at some point a suspect in connection with a crime." (<u>Id.</u>) Plaintiffs also falsely claim that "Burke <u>has never been 'cleared'</u> by law enforcement authorities because he has never been investigated as a suspect or a possible suspect." (<u>See id.</u> at 4 (emphasis added)). Tellingly, Plaintiffs themselves use this <u>same</u> terminology in papers they filed in support of a motion to dismiss an action in the United States District Court for the Northern District of Georgia, captioned <u>Otworth v. Ramsey</u>, File No. 1-00-CV-2023-CAM. In that action, John Ramsey, in a sworn affidavit dated September 15, 2000, stated: "My son, Burke Ramsey, <u>has been officially cleared</u> of any involvement in connection with the death of his sister."[5] (Hanswirth Decl., Ex. A,

_____

[5] This Court can take judicial notice of the documents maintained in court files in

¶ 8 (emphasis added); <u>see also</u>, Hanswirth Decl., Ex. B, n.1). Just as John Ramsey did not utter a defamatory statement by using these words, the Fox News Channel, parroting those words, has not defamed Burke.

In any event, even the assertion that Burke was 'cleared' does not suggest he was ever a suspect. Instead, this statement simply implies that Burke was investigated. As stated in the October 12, 2000 Affidavit of Alexander M. Hunter, (incorporated into the Complaint), Burke <u>was</u> investigated: "As part of the investigation into the murder of JonBenet Ramsey, questions about any possible involvement by her brother, Burke Ramsey ... were <u>raised and investigated</u> as part of standard investigative practices and procedures." (Complaint, Ex. B, at ¶ 5 (emphasis added)). Being "cleared" does not suggest Burke was ever a suspect, but rather restates the well-established fact that Burke was investigated and eliminated as having played any part in JonBenét's death.

Finally, Plaintiffs appear to concede that, due to the inclusion of the statement that Burke had "been cleared," the News Report does not label Burke a

---

<u>Otworth v. Ramsey</u>, File No. 1-00-CV-2023-CAM, without converting this into a motion for summary judgment. <u>Davis v. Williams Communications, Inc.</u>, 258 F. Supp. 2d 1348, 1352 (N.D. Ga. 2003) ("Federal Rule of Evidence 201 allows the Court to take judicial notice of official public records. ... when considering a [Fed. R. Civ. P.] 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to one for summary judgment...").

current suspect. (See Pl. Opp. at 2; arguing that the News Report defames Burke insofar as it suggests "that Burke had at some point in the past been considered a police suspect in connection with his sister's murder" (emphasis added)). However, that statement is not defamatory because it does not impute any criminal activity to him, nor does it suggest that he is a legitimate murder suspect. Compare Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1226 (11th Cir. 2002) (affirming the dismissal of the libel action because "the passage does not state that either the Ramseys or the police consider Hoffmann-Pugh a suspect or that they believe that she had actually committed any crime."); with Wolf v. Ramsey, 253 F. Supp. 2d 1323, 1352 (N.D. Ga. 2003) ("In short, the 'sting' or 'gist' of the passages in the Book suggest that plaintiff is a viable suspect in the murder. Such an accusation is defamatory." (emphasis added)). Because the complained-of statements clearly do not charge Burke with any crime, dishonesty or immorality, they are not defamatory per se and his claims should be dismissed.

### 2. John And Patsy Ramsey Have Improperly Adopted A New Theory In Support Of Their Defamation Cause Of Action

Rather than make any serious effort to defend the allegations in the Complaint, John and Patsy Ramsey – implicitly acknowledging the weakness of their case – identify an altogether new allegedly defamatory statement on which to base their claim. The Ramseys now argue that the statement: "Detectives say they

8

had good reason to suspect the Ramseys" is defamatory of them—and not just of Burke, as alleged in the Complaint. (Pl. Opp. at 15-21). Yet, because this statement is <u>not</u> complained of by John or Pasty Ramsey in the Complaint, their new argument supporting this new theory should be rejected in its entirety.[6] Plaintiffs are bound by their pleadings on this motion, and cannot now adopt a new theory for their cause of action.

However, even if this Court were to consider this entirely new allegation, it still is not defamatory of the Ramseys, because the Ramseys concede that they have been prime suspects in the death of their daughter JonBenét from day one.[7] Having conceded that they were prime suspects in the murder investigation, it would be both absurd and legally impermissible to allow the Ramseys to proceed

---

[6]    A reading of the Complaint confirms that only Burke complains about this particular statement. (Complaint, ¶¶ 30-31, 34-39, 45-46, 53, 57, 66).

[7]    Notably, the Ramseys do not base their claim on any <u>other</u> statements in the News Report that have the same gist. These statements include former Boulder Police Detective Steve Thomas stating: "probable cause existed to arrest Patsy Ramsey in connection with the death of her daughter"; a statement by John Ramsey admitting: "I mean the fact [is] that we [John and Patsy] were the prime suspects on December 26th. We had that ranking"; and Plaintiffs' attorney, Wood, noting: "the days of the Ramseys being the focus of the investigation . . . those days are over." (Complaint, Ex. A). The Ramseys do not contest the truthfulness of these statements; in fact, they admit their status as suspects. (<u>Id.</u> ¶ 24).

on a claim that centers on this statement.[8]  See Atlanta Journal Constitution v. Jewell, 251 Ga. App. 808, 814, 555 S.E.2d 175, 181 (2001) ("If . . . a plaintiff in a libel case alleged that a certain statement was libelous while admitting in another statement that the fact was true, his burden of proving that the statement was false could not possibly be met.  His libel action as to that statement would not be legally viable . . .").  Furthermore, due to the "intense media scrutiny and public attention" to the investigation, Hoffman-Pugh, 312 F.3d at 1223, this Court may take judicial notice of the fact that John and Patsy Ramsey have been declared prime suspects in the past.[9]  Finally, the News Report explains exactly why the

---

[8]  A claim by John and Patsy Ramsey based on this statement also fails because it is a fair and honest report of Colorado law enforcement authorities. Ga. St. Ann. § 51-5-7(8) (establishing privilege for "[t]ruthful reports of information received from any arresting officer or police authorities").  The statement is also protected under the neutral reportage privilege. McCracken v. Gainesville Tribune, Inc., 146 Ga. App. 272, 275, 246 S.E.2d 360, 361-62 (1978) ("[t]he public interest in being informed about public proceedings, public controversies, public officials, and public figures demands freedom of the press to report such events without assuming responsibility for what was said by the speaker").

[9]  Fed. R. Evid. 201(b); Davis, 258 F. Supp. 2d at 1352 (noting that the federal rules allow courts to take "judicial notice of official public records" without converting the motion to one for summary judgment).  In its decision in Wolf, 253 F. Supp. 2d at 1336, the court determined that soon after JonBenét's death, police "began to focus the investigation on defendants [John and Patsy Ramsey] as the main subjects ..." (emphasis added).

10

authorities had good reason to suspect the Ramseys.[10]

Because John and Patsy readily admit that they were suspects, the decisions

in Harcrow v. Struhar, 236 Ga. App. 403, 511 S.E.2d 545 (1999), and Wolf, 253 F.

Supp. 2d 1323, on which the Ramseys principally rely, are inapposite. In Harcrow,

the defendant distributed a flyer that accused his neighbors of being prime suspects

of the local police in the shooting of his cat. 236 Ga. App. at 403, 511 S.E.2d at

545-46. The court determined that this charge supported a libel verdict against the

defendant because the information in the flyer was (a) defamatory; and (b) not true.

As to falsity, the defendant testified "that he had no evidence as to who shot his

cat, that he did not call the police until after the writing had been published, that he

did not tell the police he suspected the [plaintiffs] shot his cat, and that no police

investigation was conducted." 236 Ga. App. at 403, 511 S.E.2d at 546. In sharp

contrast to the Harcrow decision, in this case, as already noted, the Ramseys

concede that they have been prime suspects in the killing of JonBenét. In fact,

although the intruder theory is being investigated, John and Patsy Ramsey still

---

[10]    The couple, along with Burke, were in fact the only people in the house the
night JonBenét died. In addition, since the perpetrators left behind a very lengthy
ransom note, they would have had to spend a lot of time in the Ramsey house.
(Complaint at Ex. A). Given these facts, it is axiomatic that authorities would have
had "good reason" to suspect the victim's parents.

:NY - 96405.0035 - 844059 v2

remain suspects.[11]

Just as the <u>Harcrow</u> decision is inapplicable, so too is the <u>Wolf</u> decision. In that action, the court concluded that labeling someone a murder suspect is defamatory. 253 F. Supp. 2d at 1351. Yet, as the court recognized, "truth is a defense to a libel action." <u>Id.</u> at 1352. Because the Ramseys are known to the world to be suspects, they have no defamation claim.[12]

### 3. The News Report's Statement Regarding The Lack Of Evidence Linking An Intruder To JonBenét's Death Does Not Defame Plaintiffs

The statement "yet there has never been any evidence to link an intruder to [JonBenét's] brutal murder" in the News Report is similarly not defamatory of

---

[11]    Oddly, Plaintiffs complain that the "report <u>never</u> stated that John and Patsy Ramsey were no longer suspects." (Pl. Opp. at 24). While the Ramseys may wish this were so, they have not been officially cleared. An investigation into the intruder theory is not tantamount to exoneration of John and Patsy Ramsey.

[12]    Plaintiffs make much of the determination in Judge Julie E. Carnes' decision in <u>Wolf</u>, 253 F. Supp. 2d at 1336, that the evidence is more consistent that an intruder killed JonBenét rather than Patsy Ramsey. (Pl. Opp. at 5-6). However, it is important to note that the decision in that case was issued several months <u>after</u> the News Report was aired. Further, the factual determinations in Judge Carnes' decision were based largely on the Ramseys' undisputed statement of facts submitted in connection with a motion for summary judgment. Judge Carnes even points out in the decision that the "plaintiff [Wolf] does not dispute the overwhelming majority of defendants' [the Ramseys'] factual allegations." <u>Wolf</u>, 253 F. Supp. 2d at 1326. As a result, any determinations or conclusions in the decision that are based on what appears to be an incomplete factual record should be viewed with a discriminating eye.

12

Plaintiffs.  See Gast v. Brittain, 589 S.E.2d 63, 64-65 (Ga. 2003) ("unambiguous letter cannot reasonably be interpreted to imply or suggest that [plaintiff] either engaged in or condoned the criminal conduct alleged in the letter").  As the Fox News Channel has already explained, the statement merely points out that there has not been any evidence developed to link an actual, identifiable intruder to the crime.  This is an indisputable fact, as no one has been charged with JonBenét's death.  Further, the entire gist of the News Report suggests that none of the Plaintiffs are being accused of committing a crime.  The News Report describes a new focus in the investigation, one that is moving away from the Plaintiffs and towards other possible leads.  The News Report even quotes Plaintiffs' attorney Wood as saying "this is a new day in this investigation.  The days of the Ramseys being the focus of the investigation ... those days are over." (Complaint at Ex. A).

Moreover, the News Report suggests that the crime might never be solved because police bungled the investigation of the crime scene from the start, and because there is a lack of physical evidence.  (Id.)  Plaintiffs' interpretation of the News Report – that it accuses them of JonBenét's murder – makes no sense in light of the questions raised throughout the piece.  Because the News Report expresses ignorance of the facts surrounding JonBenét's death, there is no affirmative statement of fact upon which to base this action.  Such equivocal statements cannot

13

serve as the basis of a defamation action.  See Palombi v. Frito-Lay, Inc., 241 Ga. App. 154, 156, 526 S.E.2d 375, 377 (1999) ("By its inherent expression of ignorance of the facts, the [allegedly defamatory] phrase does not amount to a statement by the speaker that wrongdoing has occurred.").

Despite Plaintiffs' attempt to cast the News Report as riddled with defamatory statements, it is quite clear that on the whole, the News Report is not defamatory.  In fact, the average viewer would come away with a balanced view of the investigation after seeing the News Report.  That view would include the following facts:

(1)    The death of JonBenét Ramsey is still unsolved;

(2)    John and Patsy Ramsey had been prime suspects in the investigation into JonBenét's death, and John Ramsey admitted as much in an interview contained in the News Report;

(3)    Burke is not a suspect in JonBenét's death, and he has received monetary settlements from media outlets that have incorrectly labeled him as such;

(4)    The investigation is moving away from John and Patsy Ramsey, and towards other suspects; and

(5)    The case is in new hands, moving from the Boulder police department to the Boulder district attorney, who wishes to take a fresh look at the case.

14

In sum, the average viewer would see the News Report for exactly what it is: an historical summary of the case detailing the progression of the investigation from focusing on John and Patsy Ramsey to focusing on other potential suspects. The News Report does not support a claim for defamation per se by any of the Plaintiffs, and as such, Plaintiffs' claims should fail.

## **CONCLUSION**

For the foregoing reasons, this Court should grant the Fox News Channel's motion in its entirety.

Dated: July 1, 2004

Respectfully Submitted,
HOGAN & HARTSON L.L.P.

Dori Ann Hanswirth
Jason P. Conti
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Facsimile: (212) 918-3100
                    - and -
ALSTON & BIRD L.L.P.
Judson Graves
Ga. Bar # 305700
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309
Tel: (404) 881-7000
Facsimile: (404) 881-7777

*Counsel for Defendant*

15

## Certification of Counsel

Pursuant to N.D Ga. Local Rule 7.1D, I hereby certify that this document is submitted in Times New Roman 14 point type as required by N.D. Ga. Local Rule 5.1B.

DORI ANN HANSWIRTH

FILED IN CLERK'S OFFICE
U.S.D___ ___nta

JUL 2 - 2004

LUTHER ___ ___..._...S, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHN RAMSEY, PATSY RAMSEY and :
BURKE RAMSEY, a minor, by his :
next friends and natural parents, :
JOHN RAMSEY and PATSY RAMSEY, :
                                     :
    Plaintiffs,                      :    CASE NO.: 1 03 CV-3976 (TWT)
                                     :
vs.                                  :
                                     :
FOX NEWS NETWORK, L.L.C., d/b/a      :
Fox News Channel,                    :
                                     :
____Defendant._____:

## CERTIFICATE OF SERVICE

This is to certify that I have on this date served a true and correct copy of the

within and foregoing

(1)    **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
        OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
        AMENDED COMPLAINT;**

(2)    **AFFIDAVIT OF DORI ANN HANSWIRTH IN FURTHER
        SUPPORT OF DEFENDANT'S MOTION TO DISMISS; and**

**(3)    DECLARATION OF DIANNE BRANDI IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS (with EXHIBIT A)**

upon counsel for Plaintiffs by Georgia Messenger courier service for hand delivery

on this date, addressed as follows:

> L. Lin Wood, Esquire
> L. LIN WOOD, P.C.
> The Equitable Building, Suite 2140
> 100 Peachtree Street
> Atlanta, Georgia 30303-1913

This 2nd day of July, 2004.

JENNIFER L. MOORE (JENNA)
Georgia Bar No. 519729

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
(404) 881-7000
(404) 881-7777 facsimile

*Counsel for Defendant*

- 2 -