IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
THOMAS W. THRASH JR
U.S.D.C. Atlanta

JUL  6 2004

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

JOHN RAMSEY, et al.,

   Plaintiffs,

v.

FOX NEWS NETWORK, LLC, d/b/a
Fox News Channel,

   Defendants.

CIVIL ACTION FILE
NO. 1:03-CV-3976-TWT

## ORDER

This is an action for defamation. It is before the Court on the Motion to Transfer Venue [Doc. 9] filed by Defendant Fox News Network, LLC. For the reasons set forth below, the Defendant's motion is granted.

### I. BACKGROUND

Plaintiffs John Ramsey, Patsy Ramsey, and Burke Ramsey are currently residents of the State of Michigan. The Plaintiffs are the father, mother, and brother JonBenét Ramsey. In 1996, the Ramsey family lived in Boulder, Colorado. Sometime during the night of December 25 or the early morning hours of December 26, 1996, JonBenét Ramsey was brutally assaulted and murdered at the age of six years at her family home. (Complaint ¶ 18.)



The Defendant is a corporation organized under the laws of the state of Delaware, with its principal place of business in the state of New York. The Defendant is a national cable television news network. On December 27, 2002, the Defendant published a report ("the Report") marking the sixth anniversary of the murder of JonBenét Ramsey. The Report, which forms the basis for the Plaintiffs' suit, contained the following statements:

> Detectives say they had good reason to suspect the Ramseys. The couple and JonBenét's nine-year-old brother, Burke, were the only known people in the house the night she was killed. JonBenét had been strangled, bludgeoned and sexually assaulted, most likely from one of her mother's paintbrushes. The longest ransom note most experts have ever seen – three pages – was left behind. Whomever killed her spent a long time in the family home. Yet, there has never been any evidence to link an intruder to her brutal murder.

(Complaint ¶ 29.) The Plaintiffs contend that this statement was defamatory. The Plaintiffs argue that the "gist of the statements . . . is that one or more members of the Ramsey family was involved in the murder," and that this is "false and defamatory." (Id. ¶¶ 32-33.)

The Defendant has a news bureau in Denver, Colorado, which employs eight persons. (King Decl. ¶ 5.) The allegedly defamatory report was written, edited, produced, and approved for air in Colorado, by employees at the Defendant's Denver Bureau. (Id. ¶¶ 5, 7-12.) The Report was written by Carol McKinley, a Denver

Bureau employee, and was based on research done in Colorado and on materials maintained in Colorado. (McKinley Decl. ¶¶ 8-11.) During the preparation of the Report, McKinley interviewed many people who had information regarding the investigation into JonBenét Ramsey's death, including prosecutors, law enforcement personnel, and private investigators. (McKinley Decl. ¶ 14.) McKinley identified twenty-five individuals who possess information pertinent to the preparation of her report. Nineteen of the twenty-five individuals live in Colorado; one lives in Florida; one lives in Pennsylvania; and the Plaintiffs, also identified by McKinley, reside in Michigan. (Id.)

When the Report aired in December of 2002, the Plaintiffs lived in Atlanta, Georgia. (Wood Decl. ¶ 4.) The Plaintiffs moved from Boulder, Colorado to Atlanta in July of 1997, and continued to live there until September of 2003, when they moved to Michigan. (Wood Decl. ¶ 4; Complaint ¶¶ 1, 5.) During the time the Plaintiffs lived in Georgia, some Colorado law enforcement personnel conducted investigative activities in Georgia, and were at times aided by Georgia law enforcement. (Wood Decl. ¶ 9.) The Plaintiffs still own real property in Atlanta, and have numerous family members and friends present in the area. (Wood Decl. ¶ 5.)

## II. STANDARD FOR MOTION TO TRANSFER VENUE

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Traditionally, federal courts accord a plaintiff's choice of forum considerable deference, only disturbing it when it is clearly outweighed by other considerations. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996); In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). The three criteria for the Court to consider in ruling on a motion to transfer are: (1) the convenience of the parties; (2) the convenience of witnesses; and (3) the interests of justice. In weighing those criteria, and deciding whether to transfer an action to another district, the district court is vested with broad discretion. England v. ITT Thompson Industries Inc., 856 F.2d 1518, 1520 (11th Cir. 1988).

## III. DISCUSSION

It is undisputed that this action could have been brought in the District of Colorado. Accordingly, the Court will next consider the factors in the transfer of venue analysis: (1) the convenience of the parties; (2) the convenience of witnesses; and (3) the interests of justice.

A.     The Convenience of the Parties

It is significant that none of the parties in this case currently reside in Georgia. Although the Plaintiffs' choice of forum is typically granted a great deal of deference, it is entitled to less weight when none of the parties resides there. Haworth, Inc. v. Herman Miller, Inc., 821 F. Supp. 1476, 1479 (N.D. Ga. 1992). This is the case, even when the Plaintiffs resided in the forum at one point, but then abandoned it in favor of another. Dove v. Massachusetts Mut. Life Ins. Co., 509 F. Supp. 248, 251 (S.D. Ga. 1981) (convenience of parties weighs in favor of transfer where movant resided in transferee forum and nonmovant abandoned transferor forum); Holmes v. TV-3, Inc., 141 F.R.D. 697, 698-99 (W.D. La. 1991) ("the plaintiffs' choice of forum, always an important factor, is of substantially less importance in this case as the plaintiffs have abandoned it and moved to Florida"). The inconvenience to the Plaintiffs of a trial in Georgia or Colorado is substantially the same.

In support of its motion, the Defendant presented evidence showing how it will be positively affected by a transfer of venue from Georgia to Colorado. First, the Defendant maintains a presence in Colorado in its Denver, Colorado bureau. (King Decl. ¶ 4.) Colorado is also the home of all of the Defendant's employees who participated in the Report's preparation. (King Decl. ¶¶ 7-12.) Five of the eight employees in the Defendant's Colorado bureau worked on the Report, and the

Defendant asserts that a trial in Georgia will significantly impact its ability to conduct business in its Colorado bureau if those persons must travel to Georgia for a trial. (King Decl. ¶¶ 15-18.) In addition to the Defendant's employees, the vast majority of the persons upon whom the Defendant relied in preparing the Report live in Colorado. (King Decl. ¶¶ 7-12; McKinley Decl. ¶ 14.) Finally, the Defendant points out that the documentary evidence used in preparing the Report at issue is maintained in Colorado, as are supporting documents maintained by non-party witnesses. (McKinley Decl. ¶ 10; King Decl. ¶ 13.)

The Plaintiffs, on the other hand, have no connection to Georgia other than family members and friends who live here and their ownership of real property. (Wood Decl. ¶ 5.) The Plaintiffs' attorney resides in this forum, but the convenience of counsel is not relevant to the issue of transferring venue. Prather v. Raymond Constr. Co., Inc., 570 F. Supp. 278, 284 (N.D. Ga. 1983). Although a transfer of this case may require the Plaintiffs to secure local counsel in a different forum, the balance of the factors in this prong of the analysis strongly weighs in favor of transferring this case to the Federal Court for the District of Colorado. The Plaintiffs' relative lack of a connection to Georgia is significantly outweighed by the Defendant's connections to Colorado in presence, witnesses, and proof with respect to this case.

B.    Convenience of the Witnesses

The convenience of the witnesses is of great importance to the decision to transfer venue from one forum to another, and the focus of the Court should be on the convenience of "key witnesses." McNair v. Monsanto Co., 279 F. Supp. 2d 1290, 1311 (M.D. Ga. 2003). Additionally, there is a distinction between party witnesses and non-party witnesses. Party witnesses are the parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum, while there is no such presumption as to non-party witnesses. Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co., 844 F. Supp. 1163, 1166 (S.D. Tex. 1994). Given the fact that, when possible, live testimony is preferred over other means of presenting evidence, the convenience of the non-party witnesses weighs most heavily on the Court in deciding on a motion to transfer venue. State Street Capital Corp. v. Dente, 855 F. Supp. 192, 197 (S.D. Tex. 1997).

As discussed above, the Defendant identified several party witnesses who must come to Atlanta if venue is retained by this Court. The Defendant also identified numerous non-party witnesses who were involved in the investigation and preparation of the allegedly defamatory report, including Colorado law enforcement personnel, Colorado prosecutors, Colorado public officials, private investigators, and former employees of the Plaintiffs. (McKinley Decl. ¶ 14.) Nineteen of the twenty-

five individuals identified by the Defendant live in Colorado. Three are the Plaintiffs' party witnesses, and, significantly, none reside in Georgia. (Id. ¶¶ 14-15.) For their own part, the Plaintiffs identified witnesses they expect to call in this case who live in the Northern District of Georgia. (Wood Decl. ¶ 6.) The majority of those persons are identified as having information regarding the "Plaintiffs' relationship with JonBenét and damage issues." (Id.) Some of the persons identified by the Plaintiffs are noted to have information regarding "the investigation," although they were apparently not involved with or interviewed for the allegedly defamatory report. (Id.; cf. McKinley Decl. ¶ 14.) The Plaintiffs' list of witnesses is primarily made up of family members and friends. (Wood Decl. ¶ 6.)

The analysis of the convenience of the witnesses does not boil down to which party produces the longer list of witnesses that will be inconvenienced by a particular forum. Rather, in addition to the weight accorded non-party witnesses, the Court's focus is on those witnesses which will be key to conducting the trial. McNair, 279 F. Supp. 2d at 1311. When considering a transfer of venue, the key witnesses are those which have information regarding the liability of Defendant. Matt v. Baxter Healthcare Corp., 74 F. Supp. 2d 467, 470 (E.D. Pa. 1999) (liability witnesses accorded more weight than damages witnesses). Damage witnesses are accorded less

weight due to the fact that without liability, there are no damages to recover. <u>Kahhan v. City of Fort Lauderdale</u>, 566 F. Supp. 736, 739 (E.D. Pa. 1983).

Considering the parties' submissions on this issue, the convenience of the key witnesses in this case weighs heavily in favor of transferring this action to the District of Colorado. The witnesses which will determine liability are those that can shed light on the issues of falsity of the Report, and the negligence or malice of the Defendant in making the allegedly defamatory statement. <u>Lake Park Post, Inc. v. Farmer</u>, 264 Ga. App. 299, 300 (2003). Those witnesses are overwhelmingly residents of Colorado, and will be greatly inconvenienced by a trial in the Northern District of Georgia. Transferring this case to the District of Colorado will alleviate the burden on them, and will permit the use of compulsory process to secure live testimony.

This is not merely a situation where the transfer will shift the inconvenience from one party's witnesses to another. Rather, the submissions of the parties show that few, if any, key witnesses in this case have a connection with the Northern District of Georgia, and that the vast majority of the witnesses who do reside here are damages witnesses. Notably, the Plaintiffs' list of twenty-one witnesses contains twenty that are expected to testify with respect to damages. (Wood Decl. ¶ 6.) In all likelihood, the Plaintiffs will not need to call every damages witness on their list,

because to do so would almost certainly be cumulative. Furthermore, the Plaintiffs' witness list contains many persons who are either relatives or friends of the Plaintiffs, and it stands to reason that they would be more willing to travel to a different forum than the key liability witnesses in Colorado, who have no connection to either party other than being interviewed for the Report. Considering the convenience of the key witnesses, and according the convenience of non-party witnesses proper weight, this prong of the analysis weighs strongly in favor of transferring this case to the District of Colorado.

### C.  Interests of Justice

There are many factors that may be considered in determining whether the interests of justice weigh in favor of a transfer to a different venue. Among those factors is "access to evidence, availability of witnesses, the cost of obtaining witnesses, the possibility of a jury view [of relevant premises], and all other practical problems that make trial of a case easy, expeditious and inexpensive." Moore v. McKibbon Bros., Inc., 41 F. Supp. 2d 1350, 1357 (N.D. Ga. 1998). In this case, the interests of justice are served by transferring this case to the District of Colorado. With respect to witnesses, the ability to use compulsory process to obtain live testimony of key witnesses, as well as the cost and convenience of producing them for trial, is a distinct advantage for trial in the District of Colorado. Southeastern

Equipment Co., Inc. v. Union Camp Corp., 498 F. Supp. 164, 166 (S.D. Ga. 1980). Additionally, significant documentary evidence, including that which was used in preparation of the allegedly defamatory report and pertinent documents maintained by non-parties, is maintained in Colorado. The trial will be facilitated by having the forum in close proximity to such evidence. Haworth, Inc. v. Herman Miller, Inc., 821 F. Supp. 1476, 1479 n.2 (N.D. Ga. 1992). And, although the Plaintiffs dispute the value of having the premises where JonBenét was murdered available for a jury view, the fact that a jury view is impossible if the trial is held in the Northern District of Georgia weighs in favor of transferring the case. Intergraph Corp. v. Stottler, Stagg & Associates, Inc., 595 F. Supp. 976, 979 (N.D. Ala. 1984).

In addition to the above factors, it is undisputed that this defamation action arises out of a report researched, written, and produced in Colorado, about a crime that took place in Colorado, at the Plaintiffs' former residence in Colorado, and that was investigated by Colorado law enforcement, Colorado prosecutors and Colorado private investigators. The only reason the Northern District of Georgia is even involved in this dispute is because at the time the allegedly defamatory report was aired, the Plaintiffs lived here. Georgia does have an interest in protecting its citizens from injury; and it may be that Georgia substantive law will be applied even if the case is transferred. Those considerations weigh in favor of denying the motion. They

are outweighed, however, by the other relevant considerations. In short, this is primarily a Colorado case, with a Georgia connection that is at best, now tenuous. Accordingly, the interests of justice weigh heavily in favor of transferring this action.

As for the Plaintiffs' concerns about their ability to obtain a fair trial in Colorado, the Court is confident that unfair prejudice can be avoided by judicious use of the measures commonly employed in the trial of sensational cases such as this. There is no reason to believe that the Plaintiffs will be deprived of a fair trial if this case is transferred to the District of Colorado. Because all of the relevant factors weigh heavily in favor of a transfer of venue, this case will be transferred to the Federal District Court for the District of Colorado.

## IV. CONCLUSION

For the reasons set forth above, the Defendant's Motion to Transfer Venue [Doc. 9] is GRANTED.

SO ORDERED, this __6__ day of July, 2004.

*/s/ Thomas W. Thrash*
THOMAS W. THRASH, JR.
United States District Judge